UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL OTIS SULLIVAN,<br>　　Plaintiff,<br>　　v.<br>WILLIAM MUNIZ,<br>　　Defendant. | Case No. 5:17-cv-05174-EJD<br><br>**ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)**<br><br>Re: Dkt. No. 1 |

Sullivan was convicted by a jury in the Superior Court of the State of California in and for the City and County of San Francisco of first-degree burglary. After waiving a jury for proof of prior convictions, the trial court found that a February 13, 1998 robbery conviction was a strike and a serious felony, but that the prosecution failed to prove the other special allegations. On March 14, 2014, Sullivan was sentenced to a state prison term of nine years.

On February 11, 2016, the First District California Court of Appeal upheld the trial court's decision that the prosecutor's peremptory strike was not a racially discriminatory peremptory strike and confirmed that sufficient evidence supported the verdict. *People v. Sullivan*, 2016 WL 556133, at *1 (Cal. Ct. App. Feb. 11, 2016). The California Supreme Court denied review on June 8, 2016. Dkt. 13-5, Ex. 8.

Sullivan then filed the instant federal petition for writ of habeas corpus under 28 U.S.C. § 2254. Petition for Writ of Habeas Corpus ("Mot."), Dkt. 1. Pursuant to an order to show cause why the writ should not be granted, Defendant ("the Government") filed an answer. Memorandum of Points and Authorities in Support of Answer to Order to Show Cause ("Opp."),

Dkt. 13-1. Sullivan filed a traverse. Traverse to Respondent's Answer ("Reply"), Dkt. 17.

**I.       BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> [April-Lynn] Bond testified that she lived in a one-bedroom apartment in a house on Buchanan Street. A flight of stairs from the sidewalk led to a walkway that in turn led to the front door of Bond's apartment on the side of the house. Her living room was just inside the building's front windows and was next to her bedroom.
>
> At about 8:00 a.m. on October 10, 2012, Bond called in sick to work and planned to stay in bed. The window to Bond's bedroom was partially open and the blinds were down. The living room windows were closed and the blinds were down. Bond's purse, work bag, work computer, home computer, and wallet were on a table in the kitchen. While laying in bed, Bond heard voices and banging in an alleyway where the garbage and recycling are kept. It sounded like the speaker was engaging in a conversation. She then heard a very clear voice coming from inside her apartment saying something like, "Oh, dude, this is my worst fucking nightmare." Peeking through a gap in the doors to her bedroom, Bond saw Sullivan, whom she did not know, inside her apartment coming from the direction of the living room windows. Bond grabbed her phone, climbed out a bedroom window, and called 911 as she made her way to the street.[2]
>
> Officer Matthew Lobre, who was dispatched in response to Bond's 911 call, arrived in uniform driving a patrol car. He spotted Bond and asked for a description of the intruder. She indicated there were two people and started to describe one as a White male with long scraggly hair and jeans when she interjected, "There he is, that's him." She pointed behind Lobre to Sullivan, who was walking down the front steps of her building. Lobre approached Sullivan and asked him to put his hands behind his back. Sullivan was calm and cooperative. As Lobre handcuffed him, Sullivan said, "This is my house. What did she say? She let me in."
>
> When Bond reentered her apartment, she noticed the front window was open, the floor Sullivan had walked on was dirty, a nearby space heater had been unplugged, and a jacket and glove that did not belong to her were in the living room. Her purse, work bag, work computer, home computer, and wallet and its contents were undisturbed. None of the drawers in a living room bookshelf had been opened, and no other property was missing from her apartment.

---

[2] Bond's 911 call was played for the jury. Bond told the dispatcher that she thought someone was breaking into her house. She stated, "I just ran out of my bedroom window because someone came in my front window. [¶] . . . [¶] . . . It was 2 voices. And somebody said 'This is my worst fucking nightmare.'" Bond could be then be heard telling an arriving police officer to go up the first set of stairs.

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

2

Inspector Paul Doherty interviewed Sullivan in a hospital while he was treated for an abscess on his left forearm. The interview was recorded and an edited version was played for the jury. Sullivan told Doherty that he was willing to talk because he had done nothing wrong. Doherty asked him, "So you've used—you said, uh, you've been up the last couple of days, but you're not under the influence right now. You're sober and you feel good enough to talk to me about this incident?" Sullivan responded, "Yeah, dude. I've tried to go to sleep 10 times but I can't seem to be left alone." Later in the interview Sullivan said, "I've been up for four fuckin' days. No one wants to give me no food or water . . . ." Doherty testified that Sullivan did not appear to be in pain during the interview, and he appeared to understand the questions that were posed to him.

Sullivan said he inherited part ownership of the building where Bond lived from a man he met in the park. The man had left the property to Sullivan and a girl whose name was something like Emma or Maggie. An attorney told Sullivan about the inheritance and said he would deliver paperwork to Sullivan at the home. On October 10, 2012, the attorney, Sullivan and the girl met at the property. "I went over there to meet her and talk about how we were gonna figure out the rent. And she'd been living there for a while, too, since dude died." When Sullivan arrived, the building was locked up and no one would answer the door. Sullivan told the girl, "Listen, you can't keep me out of my own fuckin' house," and the girl "opened the window [and] told me I could go in there." Sullivan said, "They don't go through doors, bro. I'm telling you, man. They go through fuckin' windows, like a little leprechaun or something, dude." The girl went through the window with Sullivan, but then left through the same window. Sullivan said, "I just waited [about 20 minutes] for her [to return]. . . . And then I heard something and I looked out the door and there's a police officer. . . . And I came right out [through the window] . . . [¶] . . . [¶] . . . [a]s soon as he said something."

Sullivan told the officer that he had inherited the building, but he was still arrested for burglary. "I didn't burglarize shit, nothing's broken, nothing's missing. I didn't take nothing. That was not my intent. I was told that was my place and I was trying to hash out with this chick about how we're gonna handle the bills and—'cause I'm homeless. I'm moving in." He added, "I had no intent—I don't need no dope. I didn't get high since yesterday." Sullivan acknowledged that he left his coat, phone charger and glove in the apartment. Doherty asked Sullivan why Bond would say that he broke into her apartment, and Sullivan responded, "I don't think she wants me to live there to be honest with you. I think she wants the whole ball of wax for herself." Doherty did not investigate Sullivan's story because "I can't investigate every crazy story that's told me."

The prosecution rested following the testimony of Bond, Lobre, and Doherty. The trial court denied Sullivan's motion for a directed verdict pursuant to section 1118.1 on the charge of entry with the intent to commit theft.

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

3

> Sullivan's only witness was Richard Osborn,[3] who testified that he was walking his child to school down Buchanan Street at about 8:00 a.m. on the day of the incident. He heard "some undecipherable noises coming from the bushes [in front of Bond's building], which was enough to startle us to kind of step away from the bushes, and keep going towards school." The noise was "[s]ort of a garbled speech. I couldn't decipher any of the words, but it was someone's voice." "[S]ort of grunting sounds, in a way," "maybe a little louder than a soft mumble." When he walked by again on his way back home, he saw "a gentleman standing in front of the bushes on the sidewalk. [¶] . . . I made an assumption that's probably whose voice we had heard before." The man was Caucasian with disheveled blonde shoulder-length hair and could have been Sullivan. "I noticed that he walked into the street, and I noticed a woman also crossing from the other side of the sidewalk. [¶] He seemed to walk towards her not aggressively, but it seemed . . . that maybe she was slightly avoiding him, walking away." Neither person seemed aggressive and Osborn did not see a need to intervene. However, he reported the incident to 911. Osborn did not return a call from the district attorney's office shortly before trial.

*Sullivan*, 2016 WL 556133, at *1–3.

## II. LEGAL STANDARD

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). The determination of a "factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "highly deferential" standard for evaluating state court rulings and

---

[3] As discussed *post*, Sullivan also called two police officers whose testimony was later stricken.

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)
4

"demands the state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, under the "contrary to" clause, a federal court may grant a writ of habeas corpus only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). The question under AEDPA is not "whether a federal court believes the state court's determination was incorrect," but "whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This high standard is meant to be "difficult to meet." *Greene v. Fisher*, 565 U.S. 34, 43 (2011).

**III. DISCUSSION**

Sullivan raises two claims for relief under § 2254: he argues (1) that the trial court erred in determining the prosecution's preemptory challenge was not racially based and (2) that the conviction is unsupported by sufficient evidence. *See* Mot. at 3–6.

**A. Racial Discrimination in Jury Selection**

**1. Legal Standard**[1]

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), a defendant's challenge to a peremptory strike allegedly based on race requires, among other things, that the trial court determine whether the defendant has carried his burden of proving purposeful discrimination. *Rice v. Collins*, 546 U.S. 333, 973–74 (2006). Because of AEDPA, a federal court may only grant a habeas petition on *Batson* grounds if it was "unreasonable" for the state court, in light of the evidence presented in the state court proceeding, to credit the prosecutor's race-neutral explanations. *Id.*

---

[1] To the extent a dispute exists about whether to apply Section 2254(d) or (e) to a state court's prima face finding, see Opp. at 9 & n.7, the Court concludes it is unnecessary to resolve that at this time. Under either, habeas relief is unavailable as AEDPA's statutory presumption of correctness applies since the trial court did not apply the wrong legal standard. *Crittenden v. Chappell*, 804 F.3d 998, 1021 (9th Cir. 2015) ("In light of AEDPA's mandate, 'we normally review the state trial court's fact-specific determination of whether a defendant has made a prima facie case of a *Batson* violation deferentially, applying AEDPA's 'statutory presumption of correctness.'  In contrast, "where the trial court has applied the wrong legal standard, AEDPA's rule of deference does not apply." (citations omitted)).

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

5

A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. *Id.* at 338.

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Id.* (citations omitted).

In deciding whether the defendant has made the requisite showing to satisfy the first *Batson* step, the trial court should "consider all relevant circumstances." *Batson*, 476 U.S. at 96. A "pattern of strikes" against black jurors included in the particular venire may give rise to an inference of discrimination. *Id.* A defendant satisfies the requirements of *Batson*'s first step by "producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 169 (2005).

Regarding the third step, confidence should be placed in trial judges, experienced in supervising *voir dire*, to decide if the defense has shown a prima facie case of discrimination against black jurors. *Batson*, 476 U.S. at 96. Unlike the reviewing court, the trial court had the benefit of personally witnessing the *voir dire* and thus the trial judge is "able to observe a juror's attention span, alertness, and interest in the proceedings and thus will have a sense of whether the prosecutor's challenge can be readily explained by a legitimate reason." *Id.* at 683. Mere disagreement with the trial court's ruling as to the neutrality of a peremptory strike does not compel reversal. *Id.* at 342. To the contrary, if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination." *Id.* The role of the federal habeas court in reviewing a

*Batson* claim is to "guard against *extreme* malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citation omitted). Indeed, a state trial court's determination of whether a prima facie case has been made is a presumptively correct factual finding. *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (citing 28 U.S.C. § 2254(d)).

### 2. Background

During jury selection, a question arose regarding the prosecutor's use of a peremptory challenge to excuse Juror No. 3370857 ("Juror 19"). Juror 19, in response to questioning from the trial court, stated he retired from the City and County of San Francisco, where he worked as a supervisor in the Department of Public Works. His wife, who was also retired, served on the Board of Supervisors for the City and County. *See Sullivan*, 2016 WL 556133 at *4.

Juror 19 also stated that he served on a civil jury about 15 years earlier. *Id.* The only thing he recalled about the case was that it involved entrapment and was held at the same location as the current case. When asked whether a police officer was on trial, the juror responded, "Highway patrol was involved in it. And the defendant, you know, he thought he was being entrapped, you know, by both sides." *Id.* He recalled the jury service being a good experience in which it was easy for the jurors to reach a verdict because the evidence was very convincing. *Id.* He also stated that he would not have any problem applying "common-sense logic" to the evidence presented. *Id.*

The prosecutor exercised a peremptory challenge to remove Juror 19 from the jury. Defense counsel and the court later made a record of the issue. Defense counsel argued, "[Juror 19] is the only African-American man in grand venire, meaning all the prospective jurors in the room. [¶] And I said that it did not appear there was any race-neutral reason for excusing him based on the testimony that is already in the record." *Id.* at *5. The court denied this *Batson/Wheeler* objection because Sullivan "failed to make [the required] prima facie" showing of

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

7

group bias since "merely stating that the opposing party has used its peremptory challenge to exclude a member of a particular group is not enough." *Id.* Additionally, Juror 19 was not the only African-American—there was at least one other African-American person in the grand venire; a woman, who the court excused for cause because she indicated she could not be fair to the defense. Dkt. 13-9 at ECF 12. While "African-Americans" would constitute a recognizable group, "an African-American *male* is [not] a recognizable group." *Id.* (emphasis added).

Nonetheless, even though the court found "no prima facie showing," it invited the prosecutor to state his reasons for the peremptory challenge. *Id.* at ECF 13. First, he noted that the juror stated he had served on a civil jury but then described it as being about "entrapment." *Id.* The prosecutor believed this showed a lack of understanding of the issues because the juror focused only on the defense argument of entrapment, rather than on the charges, and had apparently confused a civil case with a criminal case. *Id.* Second, he noted the juror's wife had been in a political position in San Francisco and "if he experienced or shared any of her experiences at work, [he may have] possible biases into the criminal process in the criminal court system." *Id.*

Defense counsel responded: "The prosecution said in the hallway [immediately after the challenge] things that are not what he is saying here. [¶] . . . [H]e made no mention of a wife being an ex-supervisor" or "reference to the idea that there might have been a civil or criminal trial mixup." *Id.* at ECF 14. Defense counsel thought it was "clear" Juror 19 said he was part of a criminal trial and that it was "clear" when the juror stated he felt the defendant was entrapped by both sides, he was referring to the multiple law enforcement agencies involved in the case. *Id.* Defense counsel argued "[i]t is *not* a reasonable, justifiable interpretation of this record that the prosecutor here felt that [Juror 19] was confused about anything." *Id.*

The trial court found "no prima facie case" was shown. *Id.* at ECF 15. Further, even if it had been shown, the court found "by a preponderance of the evidence that the neutral reasons were genuine, especially [] when . . . . [Juror 19] described the nature of the case . . . as []

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

8

1 'entrapment,' [] which is a legal defense." *Id.* The court thus denied the *Batson-Wheeler* motion. *Id.*

### 3. Analysis

***Batson* Step-One.** Sullivan first argues that because the trial court invited the prosecutor to present a race-neutral explanation, *Batson* step one is moot. Mot. at 3. Notably, however, the trial court clearly ruled that "no prima facie case" was met before inviting that explanation. *Compare* Dkt. 13-9 at ECF 13, *with Hernandez v. New York*, 500 U.S. 352, 359 (1991) (holding once prosecutor offered race-neutral explanation, *Batson* step one was moot since the trial court never decided whether prima facie showing of discriminatory purpose was made). Thus, here, *Batson* step one was not moot and, as the Court of Appeal found, a challenge to the one Black male was insufficient, without more, to establish a prima facie case. *Sullivan*, 2016 WL 556133 at *5. Sullivan does not provide this Court with *any* federal case or "clearly established Supreme Court precedent" to the contrary.

Sullivan next argues that there was some "dispute" about whether Juror 19 was the only African-American in the grand venire. Mot. at 3. Sullivan, however, does not explain why this is helpful in providing "clear and convincing evidence" to rebut the trial court's factual findings under Section 2254(e)(1). Opp. at 10. Moreover, the Court of Appeal upheld the trial court's prima facie finding on *other* grounds, thus rendering the "dispute" irrelevant. The Court of Appeal cited two alternative grounds to support its finding that the trial court did not abuse its discretion: (1) a single prosecution challenge to a Black juror, without more, is legally insufficient to make a prima facie showing and (2) Sullivan did not elaborate on his claim beyond arguing that no race-neutral reason existed. *Sullivan*, 2016 WL 556133 at *5. Thus, because Sullivan did not provide sufficient evidence to "permit the trial judge to draw an inference that discrimination []occurred," the state court's prima facie finding binds this Court pursuant to Section 2254. *Johnson*, 545 U.S. at 170; *see also Sullivan*, 2016 WL 556133 at *5 (noting no "pattern" of strikes against African American jurors or "desultory" voir dire shown); *cf. Miller-El v. Cockrell*, 537

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

9

U.S. 322, 342 (2003) (holding statistical evidence raised a debate about whether prosecution acted with race-based reason when used peremptory strikes to exclude 91% of the eligible African-American venire members).

Accordingly, the trial court reasonably found that defense counsel did not meet their prima facie burden of showing a race-based reason for the prosecutor's peremptory strike of Juror 19.[2]

***Batson* Step-Three.*** The Court of Appeal concluded that the trial court did not abuse its discretion in finding that the challenge was not racially discriminatory. *Sullivan*, 2016 WL 556133 at *5; *see also Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012) ("[O]ur standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it.").

Sullivan does not meet his heavy burden. He only identifies factors, like the fact that the juror had been a burglary victim, that *could* support the trial court deciding the peremptory challenge in his favor—this is insufficient as a matter of law. Mot. at 5; *see also Davis*, 135 S. Ct. at 2199–2200 (holding that federal habeas court may only overturn unreasonable findings of fact, not ones it simply disagrees with). The appellate court rejected this argument and instead concluded the trial court was reasonable in finding no *Batson* violation because: (1) it had the benefit of witnessing the juror and (2) "the record tends to support the prosecutor's position that the juror was confused about the nature of the prior case." *Sullivan*, 2016 WL 556133 at *5. While Sullivan identifies *Miller-El* as a contrary legal proposition, that case is inapplicable. As noted above, the defense in *Miller-El* identified a pattern, spanning decades, of prosecutors using peremptory strikes to exclude groups of African-American jurors. 545 U.S. at 263. That fact scenario is not present here. And so, because the trial court's finding was reasonable, pursuant to "double deference," this Court may not disrupt the holdings below that the prosecutor met his

---

[2] The Court could end its discussion here. But, because the Court of Appeal addressed the third step of the *Batson* analysis, this Court briefly addresses it.

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

10

United States District Court
Northern District of California

burden of showing race-neutral reasons for the peremptory strike of Juror 19.

For these reasons, Sullivan's *Batson* challenge is **DENIED.**

### B. Sufficiency of the Evidence of Burglary

Sullivan next argues that the trial court erred in denying a motion for judgment of acquittal pursuant to 1118.1 because the jury was presented with insufficient evidence to support his conviction for burglary. Mot. at 5–7.

Under California law, burglary requires proof of "an entry into a specified structure with the intent to commit theft or any felony," regardless of whether "any felony or theft actually is committed" therein. *People v. Montoya*, 874 P.2d 903, 911 (Cal. 1994). The Court of Appeal held all the elements of burglary were supported by "substantial evidence." *Sullivan*, 2016 WL 556133 at *10. Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court must presume the trier of fact resolved any conflicts in the evidence in favor of the prosecution and must defer to that resolution. *Id.* at 326. The jury, not the court, decides what conclusions should be drawn from evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). The jury's credibility determinations, thus, are entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Sufficiency of the evidence claims (*Jackson* claims) face a "high bar" in federal habeas proceedings because they also are subject to two layers of judicial deference. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). The court may not overturn a state court decision simply because it disagrees with it; it may only do so if the decision is "objectively unreasonable." *Id.* The only question is "whether the finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Sullivan argues that, viewing the facts in the light most favorable to him, burglary is not shown. *See* Mot. at 7. He recites facts supporting his argument that he believed he owned the

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

11

apartment and thus lacked the specific intent necessary for burglary. *Id.* He also argues that because he did not take anything from the apartment, he could not have committed burglary. *Id.*

This recitation of facts, however, does not show the jury's decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. at 650. First, there is no legal requirement that he take something from the apartment in order to burglarize it. *See Montoya*, 874 P.2d at 911. Further, as the appellate court held, "Sullivan's intent to commit theft was supported by circumstantial evidence." *Sullivan*, 2016 WL 556133 at *10. Circumstantial evidence, and inferences drawn from it, may be sufficient to sustain a conviction. *Ngo v. Girubino*, 651 F.3d 1112, 1115 (9th Cir. 2011). The jury could infer from the evidence and their common experience that "the only reasonable inference was that Sullivan had a guilty rather than an innocent intent because [his] uncorroborated and highly improbable explanation for his entry into the apartment lacked all credibility." *Sullivan*, 2016 WL 556133 at *10; *Coleman*, 566 U.S. at 656 ("The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d)). The Court, thus, cannot disturb this jury finding. *See Bruce*, 376 F.3d at 957.

Finally, while Sullivan notes that the San Francisco police did not investigate his argument that he lawfully inherited the apartment from an unidentified man in the park, Mot. at 6–7, he does not identify any Supreme Court precedent holding that the failure to do so renders the verdict "objectively unreasonable."

For these reasons, Sullivan's *Jackson* challenge is **DENIED.**

## IV. CONCLUSION

Accordingly, the petition for writ of habeas corpus is **DENIED.**

**IT IS SO ORDERED.**

Dated: October 18, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-05174-EJD
ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)